Inspector Supervisor, Stacy Delarede, stated in sum and substance at that public hearing that the owner of that house was forced to sell when she brought him to court (i.e. criminal court), and that he "chose" to sell and get out rather than deal with the building code violations.  Building Inspector Delarede also stated, on the record, that the new owner who was now before the New Paltz Zoning Board requesting permission to install solar panels in his yard, **had assured the New Paltz Building Department that he would use his property (131 State Route 208) as a second residence (not as a rental).**  See copies of the minutes for this public zoning board hearing at hand-numbered page 303A).  The fact that the new owner would need to "assure" the New Paltz Building Department that he would not use the property as a rental, when there is no known law, rule, regulation, or ordinance that prevents someone from buying a home to be used as a rental, speaks volumes of New Paltz's intolerance for competition in the off-campus rental market, and the COSA NOSTRA attitude towards who is entitled to do business in the student off-campus rental market, and who is not.  President Biden signed an executive order requiring competition among all sectors of our economy, on or about July 9, 2021.  At the signing of the executive order, President Biden wisely commented that "capitalism without

35

competition isn't Capitalism.  It's exploitation."  This has never been more true than in this case, where the insider municipal class of New Paltz are believed to be seeking to force out competing housing operators who are not part of the insider class and thereby eliminating competition, so that SUNY students looking for off-campus housing will be forced to rent housing owned almost exclusively from the municipal class.  A separate and additional claim is therefore being premised upon President Biden's executive order mandating competition among business enterprises.   Based on information and belief, SUNY New Paltz only guarantees dormitory housing to freshman students.  After their freshman year, those students who are not granted on-campus housing, or who personally choose to live off campus, can only be accommodated through off-campus rentals.  Therefore it is vital that many housing operators be allowed, and it is vital that even those who do not have any connections to the New Paltz municipal class, be allowed and welcomed as operators and providers of off-campus housing.  Selectively targeting enforcement, and destroying the business interest of those who compete against those members of the municipal class, who also conduct student rentals, in order to protect and shield the municipal class from competition, is not only antithesis to providing quality off-

36

campus housing to SUNY New Paltz students, because it reduces the number of housing units that students can choose from, but is also contrary to antitrust laws, upon which additional claims are premised in this Complaint.  It also amounts to violating the Civil Rights and property rights of owners who are forced out of the rental business, and it amounts to a taking of property without due process which is a violation under the 5th and 14th Amendments to the United States Constitution.  Students looking for off-campus housing are forced into marginal and limited housing permitted mainly from the landlords who are part of the Municipal Class, which negatively impacts the supply of off-campus housing available to them.  Therefore, not only are the unlawfully-targeted landlords affected, whose civil rights and property rights are violated, but so are the SUNY students who are forced to rent off-campus housing almost exclusively from the Municipal Class, because the number of available housing units is severely diminished by eliminating the targeted competition.

## VIOLATIONS OF DUE PROCESS AND NYS HUMAN RIGHTS WHILE IN THE CARE AND CUSTODY OF THE ULSTER COUNTY SHERIFF'S JAIL.

During the period of my unlawful incarceration, I was informed by the jail house nurse that because I was committed to jail under a false name,

that when the jail house medical staff attempted to confirm with my

doctor as to which medications I was required to take, my doctor's office

stated that they had no such patient with that name (i.e. Anthony

Ruotolo) and could not confirm anything, since no such patient existed

in their records.   Upon entering the Ulster County Jail on the evening of

January 7, 2020, the Jail House nurse informed me that the result of my

blood glucose sugar was 117.  Thereafter I was denied my prescribed

diabetes medications Invokana and Janumet as well as Finasteride, even

though well before my unlawful incarceration I had notified the New

Paltz Town court, which prescribed medicines I was required to take.

(see page 287 of exhibit B).  By denying me these prescribed

medications even though they were in the care and custody of the Ulster

County Jail (see hand-numbered page 66 of substantiating material,

exhibit B), the Ulster County Jail violated my Civil Rights under the 8th

Amendment to the United States Constitution based on my disability

("nor shall cruel and unusual punishment be inflicted"), because failing

to provide me with my prescribed medications and causing my blood

sugars to be uncontrolled, is indeed cruel and unusual punishment, and

also a violation under New York States Human Rights Law (p.149-150 of

substantiating material exhibit B).   An analysis of my blood sugar

numbers during the period of my unlawful incarceration will show that my recorded sugars went from 117 on the evening of committal to jail, to as high as 408, although this number was recorded in the official records as 308. I asked the jailhouse nurse why I was not being administered my prescribed medications, and she replied that my doctor could not confirm "Anthony Ruotolo" being a patient in their offices, and that these are expensive medications which Ulster County cannot afford. I then asked if my wife could hand deliver my prescribed medications in their prescribed bottles and if the jailhouse staff would accept those medications and administer to me those medications. I was told by jail house personnel that yes, that would be done if my wife delivered those medications to the jailhouse medical staff. My wife did deliver those medications to the jailhouse staff, and they accepted them from my wife, but then the medical staff still failed to administer my prescribed medications to me, even though those medications were in the care and custody of the Ulster County Jail (see hand-numbered page 66 of substantiating material, exhibit B). By not administering my prescribed medications after they had been accepted and were in the care and custody of the Ulster County Jail, the Ulster County Jail and Ulster County Sheriff violated my Civil Rights under the 8th Amendment

to the United States Constitution, because the county and the Ulster
County Sherriff's office caused my blood sugars to be completely out of
control and also violated the New York State Human Rights law. (see
pages 211 and 212 of substantiating material at exhibit B)   Denying my
Finasteride also caused a severely restricted urine stream, which based
on past experience, is a prelude to a urinary tract infection.  This
indifference to my health constitutes a violation of my Civil Rights under
the United States Constitution, at the 8th amendment ("...nor cruel and
unusual punishment be inflicted...").   Additional civil rights violations
occurred when I was repeatedly provided only improper food trays for
diabetics.  Each meal consisted of either bread, rice, pasta and potatoes,
and most often more than one of those, which are wholly inappropriate
for diabetics.  (See hand-numbered pages 67 and 68 of substantiating
material, exhibit B.)  Lastly, Sheriff's office is expected to know what is
and what is not a jailable offense.  Even a cursory search would have
revealed that nowhere under Building Code 140-8B does it establish
that a violation of that code, is a jailable offense.  By jailing the property
manager for a non-jailable offense, the property manager's civil rights
were violated  under the 14th amendment to the United States
Constitution..

40

### DUE TO REQUIREMENT FOR EARLY RELEASE, CAUSED BY SIGNIFICANT DECLINE IN HEALTH BY ULSTER COUNTY JAIL'S FAILURE TO ADMINISTER  PRESCRIBED DIABETES AND PROSTRATE MEDICATION, A WAIVER OF APPEAL WAS REQUIRED TO BE SIGNED, AND AN ADDITIONAL ONE-YEAR PROBATION WAS IMPOSED  BY THE NEW PALTZ TOWN JUDGE AS A CONDITION OF A MERE 26-DAY EARLY RELEASE

The one-year probation and specific performance of removing interior doors which separated the lower level from the upper level of the residences, was imposed by the New Paltz Town Court, as a condition for early release, even though the New Paltz Town Court is not a court of record and therefore not vested with the authority to impose either one-year probation or requirement for specific performance. Furthermore, when it was revealed to the satisfaction of the Building Inspector Supervisor Stacy Delarede, that those doors which I was ordered to remove, were actually required to be there as per SUNY New Paltz fire safety policy, and required to be there per New York State Fire Safety Regulations at 710 and 717 (see hand-numbered pages 70-75C of substantiating material, exhibit B), upon showing proof of those requirements under both University Housing Policy and New York State Fire safety regulations, requiring those doors to be in place, Supervisor Stacy Delarede unilaterally rescinded the order to remove those doors,

41

but maintained the one-year probation and the court-ordered building inspections on the court-ordered dates.  By the New Paltz Town Court imposing on me a probationary period of one year and ordering me to take down doors that were required to be in place, on the evening of February 11, 2020, the New Paltz Town Court violated my 14th Amendment to the United States Constitution when it maintained and subjected the managing agent to the probationary period and inspections without due process of law, while imposing no penalty at all on the LLC which owns the property.  The order to remove the doors was contrary to both University Fire Safety Policy and New York State Fire Safety Policy.

During the period of my unlawful incarceration, I filed a medical grievance as a result of the Ulster County jail failing to administer my prescribed medications.  Shortly after filing this medical grievance, I was brought back to New Paltz Town Court on February 11, 2020.  I was informed that I could go home that evening if I signed a waiver of appeal (see hand-numbered page 69 of substantiating material).  I signed the waiver of appeal neither knowingly, nor voluntarily, because that waiver of appeal was signed under extreme duress as a result of the pain and suffering that I was under as a result of not being administered

my prescribed medications for over a month, and not being provided

with appropriate food trays.  By the New Paltz Town Court requiring me

to sign a waiver of appeal so that I could be released and resume my

prescribed medication regimen, the New Paltz Town Court violated my

14th Amendment rights (i.e., "nor be deprived of life, liberty or property,

without due process of law"), and further violated the 8th Amendment

when the Ulster County Jail failed to administer my prescribed

medications after my wife hand-delivered them to the jailhouse nurse,

who accepted them for administering.  (See hand-numbered page 66 of

substantiating material, exhibit B for a copy of this voucher pertaining

to my prescribed medications.)


**VETERAN ASSISTANT DISTRICT ATTORNEY, BELIEVED TO BE
NAMED JOHN RUSK, WAS ASSIGNED, OR SUPPOSED TO BE
ASSIGNED TO THE NEW PATZ TOWN COURT AND WAS SUPPOSED
TO BE CHARGED WITH THE DUTY AND RESPONSIBILITY TO
ENSURE THAT NO CIVIL RIGHTS VIOLATIONS TOOK PLACE AND
THAT ALL CPL REQUREMENTS WERE ADHERED TO, BUT AT ALL
RELEVANT TIMES FAILED TO DO SO.**


CLAIMS ASSERTED

1.      Based on information and belief, there was supposed to be a

veteran assistant district attorney assigned to the New Paltz Town

Court named John Rusk.  This Ulster County veteran assistant district

43

attorney either failed to supervise the criminal court proceedings, or he acted in concert with the New Paltz Town Court in orchestrating a sham legal proceeding from the initial issuance of the appearance ticket against Anthony Routolo (no such person exists) and 137 State Route 208 LLC and 139 State Route 208 LLC. and up to the conclusion of the criminal proceedings which ended on March 8th 2021 with the final letter from building inspector Stacy Delarede. (see hand numbered page 204 of exhibit B)  This failure to supervise included up to March 8, 2021 when legal proceedings ended with the letter from the building inspector saying that upon all of the final inspections, no violations were revealed.  (See hand-numbered page 204 of substantiating material.)

2.      The assigned Assistant District Attorney, as well as attorney Kevin Barry, as well as New Paltz Town Judge James Bacon, all either knew or should have known that nowhere under New Paltz Building Code section 140-8b does it call for jail time or fines, and committing to jail was in violation of all due process laws indicated and constitutional safeguards.

3.      At all relevant times, the assigned Assistant District Attorney, as well as attorney Kevin Barry, as well as New Paltz Town Judge James Bacon, all knew or should have known that Section 140-8b

44

of the New Paltz building code is a myriad of "x's" "o's" and "p's" which requires a placement of those characters into a grid pattern in order to determine if a use is or is not allowed, and as such this building code section, if it is going to be treated as a misdemeanor, is void for vagueness because a person of ordinary intelligence cannot determine if a use is or is not allowed.  (See hand-numbered page 93=113 of substantiating material for case law on doctrine of void for vagueness.)

4.     At all relevant times, assigned Assistant District Attorney, attorney Kevin Barry, and New Paltz Town Judge James Bacon, all knew or should have known that committing the property manager to jail, when the jury had not rendered a separate verdict on the property manager, as required under CPL 300.10(4) (i.e. **The court "must instruct the jury  to render a verdict separately upon each count to it, and with respect to each defendant if there be more than one,..."**) constituted a violation of due process under the United States Constitution.  A reading of the complaint, upon which no trial can take place unless the defendant waives his rights to a supporting deposition, and in this case the property manager did not waive any such rights, reveals that there were in fact more than one defendant on the

complaint.  (See hand-numbered pages 157-158 of substantiating

material).

5.     At all relevant times, the assigned Assistant District

Attorney, and attorney Kevin Barry, and New Paltz Town Judge James

Bacon, all knew or should have known that Mark Jaffee testified that he

never submitted nor signed a supporting deposition and as such the

Misdemeanor complaint was never converted into an informational

upon which an unclassified misdemeanor could be prosecuted.  (See

hand-numbered page 235-236 of substantiating material, exhibit B, for

CPL section).

6.     At all relevant times, assigned Assistant District Attorney,

and attorney Kevin Barry, and New Paltz Town Judge James Bacon, all

knew or should have known that a trial date of November 14, 2019

when the property manager appeared in court to enter a plea of not

guilty on April 23, 2019, was in complete violation of New York State

Uniform Justice Court Act at section 1301.  (See hand-numbered page14

of substantiating material). To continue prosecution long after the 30-

day statute of limitation had expired, constituted a violation of the 6th

Amendment to the United States Constitution.  Also, Judge Bacon was

informed in my Motion for Stay Pending Appeal regarding Section 1301 of UJCA.  (See hand-numbered page 282 at exhibit B.)

7.     At all relevant times, assigned Assistant District Attorney, and attorney Kevin Barry, and New Paltz Town Judge James Bacon, all knew or should have known that under New York Limited Liability company Law at Section 609, the managing agent of an LLC cannot be held personally liable for the debts or obligations of the LLC.  To continue to maintain such unlawful proceedings against the managing agent is a violation of the 5th and 14th Amendments to the United States Constitution.  (See hand-numbered page 198 of substantiating material, at exhibit B and pages  54-56 for deeds showing who owns the properties).

8.     At all relevant times, the assigned Assistant District Attorney, and attorney Kevin Barry, and Judge James Bacon all knew or should have known that to commit an individual to jail under a false name with the intent to deceive the Ulster County Sherriff (i.e. a public servant) as to who is being committed to jail, constitutes a New York State Penal Code violation  under 175.35, the felony offense of submitting a false instrument for filing.   It also violates the 6th Amendment to the US Constitution, because the property manager had a

right to a public trial under his true identity, as per the 6th amendment

to the United States constitution and a trial that was not a sham trial.

(See hand-numbered page 59 for commitment order to jail under a false

name, and pages 306-307 for penal code section 175.35, submitting a

false instrument for filing which is an E felony.)

9.      At all relevant times, the assigned Assistant District

Attorney, and attorney Kevin Barry, and New Paltz Town Judge James

Bacon all knew or should have known that to require the defendant to

sign a waiver of appeal, when that waiver is being signed due to

extremely poor medical condition caused by not being provided

prescribed medications for his disability (see hand-numbered page 69

of substantiating material, exhibit B) constitutes denied due process

under the 14th Amendment to the United States Constitution, as well as a

violation of New York State Human Rights Law.  (see hand numbered

pages 211-212 of substantiating material, exhibit B).

10.      At all relevant times, the assigned Assistant District

Attorney, and attorney Kevin Barry, and New Paltz Town Judge James

Bacon, all knew or should have known that to impose a $5,000 fine for

the 137 property when the maximum fine as per the New Paltz Building

Code at section 140-58 places a maximum fine of $350, constitutes a

violation of the 8th Amendment ("nor shall excessive fines be imposed")
and that pursuant to New York State Secretary of State guidelines on
when cumulative fines can be imposed, no cumulative fines applied due
to lack of separate required dates on the complaint. (See hand-
numbered page 45 of substantiating material at exhibit B).

11.     At all relevant times, assigned Assistant District Attorney,
and attorney Kevin Barry, and New Paltz Town Judge James Bacon, all
knew or should have known that under a criminal proceeding, in order
to render a proper verdict the Jury must be unanimous in their verdict,
and the jury was required to be asked whether they all agreed on the
verdict and must answer in the  affirmative.  A cursory reading of the
court transcript (exhibit C and hand numbered pages 245-247 of
substantiating material at exhibit B) shows that the judges instructions
to the jury,  that this was never done, nor did the judge ask the Jury
foreman whether they all agreed on the verdict and the foreman must
answer in the affirmative as required under CPL 310.40(2),  and as such,
no verdict of guilty on the property manager can be assumed.  (See
hand-numbered page 250 of substantiating material, exhibit B).  This
omission violated due process under the 14th Amendment to the U.S.
Constitution.

12.     At all relevant times, the assigned Assistant District Attorney, and attorney Kevin Barry, and New Paltz Town Judge James Bacon, all knew or should have known that since the Town of New Paltz was a plaintiff in the criminal proceedings against the 137 State Route 208 LLC and the managing agent (see complaint at hand-numbered pages 157-158 of substantiating material, exhibit B), such proceedings were illegal to be carried out in New Paltz Town Court pursuant to Judiciary Law at paragraph 14 (see hand-numbered page 20 of exhibit B) and also under the rules as promulgated by the New York State Chief Administrative Law Judge at section 100. (See hand-numbered page 24-29 of substantiating material, exhibit B).

Note, the assigned Assistant District Attorney was served with the notice of claim under the name John Doe, because the name of that Assistant District Attorney assigned or scheduled to be assigned, to the New Paltz Town Court,  on the pertinent dates, is still not known to me for certain.

13.     At all relevant times, the assigned Assistant District Attorney, attorney Kevin Barry, and New Paltz Town Judge James Bacon all knew or should have known that to impose a fine of $7,500 fine on the property manager personally for the 139 house, when those

50

proceediungs were stayed pursuant to New York State Town law
267(a)(6), constitutes a violation under the United States Constitution
at the 5th and 14th Amendments because the fine was imposed and
required to be paid by the property manager, under further threat of jail
time (see hand-numbered page 33 of substantiating material) while the
proceedings were stayed pursuant to law  and without any trial on the
139 property.

14.    At all relevant times, the New Paltz Town Court imposed
fines on the property manager personally, and not on the LLC's which
are the owners of the properties.   (See deeds at hand numbered pages
54-56 exhibit B.)

15.    The monetary fines imposed by the New Paltz Town Court
personally on the property manager exceeded the maximum
jurisdictional amount of the New Paltz Town Court (hand-numbered
page 278A) and are contrary to NYS secretary of State publication on
when cumulative fines can be imposed.  (See hand-numbered page 45 of
substantiating material)


ADDITIONAL CLAIMS ARE AT PAGES 1-30 OF EXHIBIT A

## HIRING OF ATTORNEY TO HANDLE APPEAL

During the period of my unlawful incarceration, my wife retained the services of a New Paltz criminal defense lawyer named Michael Cohn. My wife's numerous efforts to hire a lawyer proved equally difficult with many lawyers not even believing her that her husband was in jail for a common building code violation, and most stated that they had never even heard of any such similar situation. Mr. Cohn was the only lawyer willing to take the case and asked my wife to meet him at a gas station to give him an initial retainer check for $7,500 to handle my appeal and unlawful incarceration. It was at Mr. Cohn's repeated urging that I signed the waiver of appeal (see hand-numbered page 69 of substantiating material) in order to get out of jail early, so that I could immediately resume my prescribed medication. Mr. Cohn repeatedly assured me that the waiver of appeal would never stand up in court due to my being denied my prescribed medications while in jail. I was released after signing the waiver of appeal under my correct name, Angelo Ruotolo, even though the heading contained the false name "Anthony Ruotolo" (see hand-numbered page 69 of substantiating material). After a long pause in the proceedings due to Covid 19, Mr. Cohn first claimed that he could not handle the appeal because he was

too sick, although he never stated what the nature of his illness was.   He

then said that he would no longer handle the appeal because I was

making it too difficult for him, although he never specified what it was

that I was doing that made it too difficult.  Even before claiming illness,

he said that it was difficult in a small town like New Paltz, for an

attorney to be litigating against the same town he lived in.  Mr. Cohn

informed me that he was unilaterally withdrawing from being my

appellate attorney, and I opposed this attempt at client abandonment.

Mr. Cohn then filed a motion in Ulster County Supreme Court to

withdraw as my attorney.  (See hand-numbered pages 270-272.)  A

judge from a different county granted Mr. Cohn's motion to withdraw,

without even as much as an accounting of unused funds that was

specifically called for in Mr. Cohn's own retainer agreement.  (See page

308 of exhibit B for Mr. Cohn's retainer agreement and also see hand-

numbered pages 267-269 of substantiating material for judge's decision

from another county, allowing Mr. Cohn to withdraw without even as

much as an accounting nor assigning differet counsel to handle the

appeal.)  I filed a motion for reconsideration (hand-numbered pages

261-266) due to lack of accounting of unused funds, and requested that

a different attorney be assigned to me as is my right under the 6th

53

Amendment to the United States Constitution (i.e. "... and to have the assistance of counsel for his defense"); as is also my right under New York State CPL 170.10(2) (i.e. "The defendant has the right to the aid of counsel at the arraignment and at every subsequent stage of the action."); and as is my right under New York State County Law section 18b, paragraph 722 (i.e. "The governing body of each county...shall place in operation throughout the county a plan for providing counsel to persons charged with a crime or who are entitled ...."); and as was the property manager's right under the United States Supreme Court Legal Precedent titled Argensinger v. Hamlin, 407 US 25 (1972) holding that no accused may be deprived of liberty as the result of any criminal prosecution, whether felony or misdemeanor, in which he was denied the assistance of counsel.  The judge from the county outside of where the action took place did not request that Mr. Cohn provide for an accounting of unspent funds as called for under Mr. Cohn's own self-drafted retainer agreement.  (See hand-numbered page 308.)  That judge from a different county also ignored my request to have substituted counsel appointed.  Despite all of these laws, rules, regulations and legal precedents establishing the absolute right to counsel in a criminal case where jail time was imposed, the judge from

54

Sullivan County, whose jurisdiction is highly dubious at best, granted

Mikael Cohn's motion to withdraw as my attorney without granting my

request to have substituted counsel appointed, which is my right under

all of the foregoing legal precedents, laws, rules and regulations, and

without granting my request for an accounting of unused funds.  This

leaves me with no other option than to have a hearing heard on the

merits in the fraudulent New Paltz matter, thereby leaving me with no

option other than this federal civil rights lawsuit.


**BECAUSE ALL OF THESE PROCEEDINGS IN NEW PALTZ TOWN
COURT WERE PREMISED ON FRAUD, WITH THE INTENT TO FORCE
THE PLAINTIFF OUT OF BUSINESS IN ORDER TO SHIELD FROM
COMPETITION THE MUNICIPAL CLASS  WHO ARE ALSO
CONDUCTING RENTALS FOR  OFF-CAMPUS STUDENT HOUSING, A
FRAUD CLAIM IS ALSO BEING ASSERTED HEREIN.  THIS CLAIM
PREMISED ON FRAUD ALONG WITH OTHER CLAIMS SET FORTH AT
NUMBERED PAGES OF 1-30, EXHIBIT A, ARE ALSO PREMISED ON
FRAUD AND VIOLATION OF CIVIL RIGHTS .**


RELIEF REQUESTED

$3,000,000 (three million dollars) for violations of all of the

aforementioned claims.

$3,000,000 for the taking of property by restricting occupancy to 5 persons maximum when in 2016 the property was permitted to have 7 occupants in 139 Route 208 and 6 occupants in 137 Route 208.

Whatever additional relief the court deems just and proper.

Any finding by the court that deems this complaint and filing deficient, then plaintiff kindly requests that this filing by a pro se litigant, be held to a lesser stringent standard than those drafted by an attorney, as established under the United States Supreme Court Ruling of Haines v. Kerner 404 U.S. 519 (1972).

FOR ALL OF THE ABOVE CITED REASONS, plaintiff in this Federal Civil Rights Violation complaint prays for an order granting relief under all of the aforementioned claims in this complaint; as well as under the claims asserted at printed pages 1-29 of exhibit A.